******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

THERESA K. FRECCIA, EXECUTOR (ESTATE OF
FRANK J. FRECCIA, JR.) *v.*
GUIN FRECCIA ET AL.
(AC 46037)

THERESA K. FRECCIA, EXECUTOR (ESTATE OF
FRANK J. FRECCIA, JR.) *v.* FRANK J.
FRECCIA III ET AL.
(AC 46038)

THERESA K. FRECCIA, EXECUTOR (ESTATE OF
FRANK J. FRECCIA, JR.) *v.*
FRANK J. FRECCIA III
(AC 46040)

Cradle, Suarez and Seeley, Js.*

*Syllabus*

In each of three summary process cases, the respective defendants appealed from the trial court's judgment for the plaintiff, either in her individual capacity or as representative of the estate of her husband, the decedent. Each of the defendants claimed, inter alia, that the court improperly failed to conclude that they had a present right to remain in the respective real property or that equitable considerations precluded the plaintiff from obtaining a judgment in her favor. *Held*:

In each of the three appeals, this court declined to reach the merits of the respective defendants' unpreserved claim that the trial court had abused its discretion and had prejudiced them by consolidating for trial the action underlying their respective appeal with four other related summary process actions brought by the plaintiff because the defendants' attorney did not articulate that claim with sufficient clarity before the trial court and the defendants did not demonstrate that it warranted an extraordinary level of review.

The trial court's failure to conclude, in each of the three cases, that the defendants had a present right to remain in the real property or that equitable considerations precluded the plaintiff from obtaining judgment in her favor was not improper, as the court did not find credible testimony that the decedent had promised the defendants that they could remain in the property beyond his death, this court would not second-guess that determination,

* The listing of judges reflects their seniority status on this court as of
the date of oral argument.

and the trust and the will of the decedent did not reflect that he had contemplated such an outcome.

In the first case and the third case, the plaintiff, in her representative capacity, had the legal right to seek possession of the real property at issue and, accordingly, had standing to commence the respective underlying summary process action.

In the second case, the plaintiff, in her individual capacity, properly invoked the trial court's subject matter jurisdiction, despite the fact that the notice to quit served on the defendants did not accurately identify the plaintiff in such capacity as the owner of the real property at issue, because the notice complied with the statute (§ 47a-23), as it accurately identified the plaintiff's attorney-at-law.

Argued December 4, 2024—officially released May 6, 2025

*Procedural History*

Summary process action, in each case, brought to the Superior Court in the judicial district of Stamford-Norwalk, Housing Session, where, in the second case, Theresa K. Freccia, in her individual capacity, was substituted as the plaintiff; thereafter, the cases were consolidated for trial and tried to the court, *Spader, J.*; judgment in each case for the plaintiff, from which the defendants in each case filed separate appeals with this court. *Affirmed.*

*John J. Morgan*, for the appellants in each case (defendants in each case).

*Joseph DaSilva, Jr.*, with whom, on the brief, was *Marc J. Grenier*, for the appellee in each case (plaintiff).

*Opinion*

SUAREZ, J. In this opinion, we resolve claims raised in three separate but related appeals, Docket Nos. AC 46037, AC 46038, and AC 46040. In the summary process action underlying AC 46037, the plaintiff, Theresa K. Freccia, in her capacity as the executor of the estate of Frank J. Freccia, Jr. (decedent), brought a summary

process action against the defendants, Guin Freccia[1] and David D'Andrea, seeking to obtain a judgment of possession with respect to real property located at 95 Bryam Road in Greenwich. The court rendered a judgment of possession in favor of the plaintiff in that action. On appeal, the defendants claim that (1) the plaintiff lacked the power to commence the underlying summary process action, (2) the court improperly failed to conclude that they had a present right to remain in the subject property or that equitable considerations precluded the plaintiff from obtaining a judgment in her favor, and (3) the court prejudiced the defendants by consolidating five related summary process actions for trial.

In AC 46038, the plaintiff, Theresa K. Freccia, in her individual capacity, brought a summary process action against the defendants, Frank J. Freccia III, Tammie Freccia, Locksley Freccia, and D'Artagnan Freccia,[2] seeking to obtain a judgment of possession with respect to real property located at "40 Locust Street, Building 2 and Garage" in Greenwich.[3] In that action, the court

[1] In their principal appellate brief, the defendants in AC 46037 state that, although the plaintiff brought the notice to quit and complaint against "Guin Freccia," that defendant's proper name is "Guinevere Freccia." We, however, will refer to "Guin Freccia" because that is how she is identified in the record.

In the interest of simplicity and in light of the commonality of the surnames of the majority of the parties in this case, in this opinion we will refer to each of the Freccias by their respective first names unless otherwise specified.

[2] In their principal appellate brief, the defendants in AC 46038 state that the person identified in the plaintiff's action as "D'Artagnan Freccia" does not exist but that "Dartagnan Freccia," who is also named as a defendant in a separate action, is the plaintiff's granddaughter. We, however, will refer to "D'Artagnan Freccia" because that is how she is identified in the record.

[3] The original complaint was brought by the plaintiff in her capacity as the executor of the estate of the decedent. The plaintiff, still in her representative capacity, later filed a revised complaint. Thereafter, the plaintiff filed a motion to substitute Theresa K. Freccia, in her individual capacity, in lieu of Theresa K. Freccia, as the executor of the decedent's estate, as the plaintiff. The plaintiff also filed an amended revised complaint, dated February 9, 2022, reflecting the substitution. In support of the motion to substitute, the plaintiff represented that, upon the death of the decedent, the plaintiff,

rendered a judgment of possession in favor of the plaintiff. On appeal, the defendants claim that (1) the notice to quit served on them was invalid, (2) the court improperly failed to conclude that equitable considerations precluded the plaintiff from obtaining judgment in her favor, and (3) the court prejudiced the defendants by consolidating five related summary process actions for trial.

In AC 46040, the plaintiff, Theresa K. Freccia, in her capacity as executor of the estate of the decedent, brought a summary process action against the defendant, Frank J. Freccia III, doing business as Freccia Brothers Auto Sales, seeking to obtain a judgment of possession with respect to real property located at 246-248 West Putnam Avenue in Greenwich. In that action, the court rendered a judgment of possession in favor of the plaintiff. On appeal, the defendant claims that (1) the plaintiff lacked standing to commence the action, (2) the court improperly failed to conclude that he had a present right to remain in the subject property or that equitable considerations precluded the plaintiff from obtaining a judgment in her favor, and (3) the court prejudiced the defendant by consolidating five related summary process actions for trial. We affirm the judgments of the court.

The following procedural history is relevant to our resolution of the claims raised in these appeals. In the case underlying AC 46037, the plaintiff alleged that, on June 1, 2019, the defendants, Guin and D'Andrea, entered into an oral lease for the use and occupancy of 95 Byram Road in Greenwich. It is undisputed that Guin is the granddaughter of the plaintiff and the decedent and that D'Andrea is Guin's fiancé. The plaintiff

who had a right of survivorship in the subject property, became the sole owner of the property. The court granted the motion. Thus, by the time of trial, Theresa K. Freccia, in her individual capacity, was the plaintiff in the underlying action.

alleged that the defendants' right or privilege to occupy the premises terminated by means of her service of a notice to quit on July 23, 2021, which provided notice to the defendants that they were to quit possession of the property by August 26, 2021. The plaintiff alleged that the defendants, however, remain in possession of the property.

The defendants filed various special defenses. First, they alleged that "[i]t would be unconscionable and inequitable to enforce forfeiture under the circumstances." Second, they alleged that the plaintiff failed to satisfactorily perform the agreement that existed between them and the decedent, granting the defendants a life tenancy in the subject premises. Third, the defendants alleged that the notice to quit was a nullity in light of "the tenancy or estate" granted by the decedent.

By way of counterclaim, the defendants alleged that the decedent had granted the defendants a life estate in the subject premises "in consideration of the defendants performing repairs and/or renovations to the premises, and paying for certain expenses relating to the premises, and . . . D'Andrea, accepting below market compensation for work performed at the automobile business known as Freccia Brothers Auto Sales." The defendants alleged that, in reliance thereon, they "entered into possession of the premises and performed repairs and/or renovations to the premises and have paid expenses relating to the premises. . . . D'Andrea . . . has been working at the business, Freccia Brothers Auto Sales, and has been paid below market compensation." The defendants alleged that the plaintiff has breached the agreement and "[i]t would be against equity and good conscience to deprive the defendants of the enforcement of the said agreement."

In the case underlying AC 46038, the plaintiff, in her individual capacity,[4] alleged in count one of a revised

_____

[4] See footnote 3 of this opinion.

complaint that Frank had entered into a written lease with the plaintiff for the use and occupancy of 40 Locust Street, Building 2 and Garage, in Greenwich. The written lease set forth a monthly lease payment amount beginning on June 1, 2019. The plaintiff alleged that the right to possession enjoyed by Frank terminated because of lapse of time and that, on August 14, 2021, she served him, as well as Tammie, Locksley, and D'Artagnan, with a notice to quit, but the defendants continue in possession. It is undisputed that Frank is the son of the plaintiff and the decedent; Tammie is the wife of Frank; and Locksley and D'Artagnan are the children of Frank. In count two, the plaintiff alleged that the defendants originally had a right or privilege to occupy the subject premises but that such right or privilege had been terminated by service of the notice to quit on August 14, 2021.

By way of special defenses, the defendants alleged, first, that "[i]t would be unconscionable and inequitable to enforce forfeiture under the circumstances." Second, the defendants alleged that the plaintiff had failed to satisfactorily perform an agreement between her and the defendants by virtue of which they were granted a life estate in the subject premises by the decedent. Third, the defendants alleged that the notice to quit was a nullity in light of their life estate in the subject premises. By way of counterclaim, the defendants alleged that the decedent and Frank had entered into an agreement whereby the defendants were granted a life estate in the subject premises "in consideration of [Frank] performing renovations to the premises, and paying for certain expenses relating to the premises, and [Frank] accepting below market compensation for work performed at the family automobile business, known as Freccia Brothers Auto Sales, and for continued work and operation of the family business." The defendants alleged that they relied on the agreement

and have resided at the premises for decades, and that Frank had performed pursuant to the agreement. The defendants alleged that the plaintiff had breached the agreement by commencing this summary process action and that "[i]t would be against equity and good conscience to deprive the defendants . . . of the enforcement of the said agreement and life tenancy or estate."

In the case underlying AC 46040, the plaintiff, in her capacity as executor of the estate of the decedent, alleged in count one that, on September 1, 2019, she had entered into a nine month lease with Frank, doing business as Freccia Brothers Auto Sales, for the use and occupancy of premises known as 246 West Putnam Avenue in Greenwich. The lease agreement set forth the monthly payment that became due on the first of each month, with the lease terminating on May 31, 2020. The plaintiff alleged that the defendant's right or privilege to occupy these premises was terminated by a notice to quit on August 14, 2021, which was duly served on the defendant, that notified the defendant that he was to quit possession on or before August 22, 2021. The defendant, however, continues in possession. The plaintiff alleged in count two that, on or after September 1, 2019, the defendant also took possession of what she described as "[a]dditional [p]remises" at 246-248 West Putnam Avenue in Greenwich and that, although the defendant originally had a right or privilege to occupy these premises, such right or privilege had been terminated by the service of a notice to quit on August 14, 2021, notifying the defendant to quit possession on or before August 22, 2021. The defendant, however, continues in possession. In count three, the plaintiff alleged in the alternative that the defendant never had the right under the lease to occupy the additional premises.

By way of special defenses, the defendant, first, alleged that the plaintiff failed to satisfy an agreement

by which he had a life tenancy in the subject premises. Second, the defendant alleged that the plaintiff's notice to quit was a nullity in light of the defendant's life tenancy in the subject premises. Third, the defendant alleged that "[t]he plaintiff had made assurances and representations to the defendant that he may remain in possession of the premises and operate his business." The defendant also alleged that the plaintiff had "engaged in unconscionable and inequitable conduct towards the defendant." The defendant alleged that "[a]ny eviction would cause the defendant to suffer a loss wholly disproportionate to any injury claimed by the plaintiff; such injury of the plaintiff, if any, would be reparable." The defendant alleged that any breach on his part "was neither wilful nor grossly negligent" and that "[i]t would be unconscionable and inequitable to enforce forfeiture under the circumstances."

By way of counterclaim, the defendant alleged in a first count that he and the decedent had entered into an agreement whereby the defendant received a life tenancy in the subject property in exchange for his "receiving below market compensation for work performed at the . . . family automotive sales business, Freccia Brothers Auto Sales, and for continued work and operation of the family business." The defendant alleged that the family business, which specializes in the repair, restoration and sale of vintage Volkswagen motor vehicles, has operated at the subject premises since 1922. The defendant alleged that the family business has been "his life's work" and that he continues business operations at the subject premises in fulfillment of the agreement made with his father, the decedent. In a second count of his counterclaim, the defendant alleged that any written lease that he entered into with the plaintiff was void in light of the life tenancy, which he enjoys as part of the agreement he reached with the decedent. The defendant also alleged that "the

plaintiff assured and represented to [him] that he can stay in possession and occupancy of the premises and operate his business, acknowledging that was his father's intent; reaffirming or ratifying the life tenancy or estate granted to [him] by his father." The defendant alleged that "[i]t would be against equity and good conscience to deprive [him] of the enforcement of said agreement with his father . . . ."

These three underlying cases, and two other related cases, brought under Docket Nos. CV-21-6006603-S and CV-21-6006597-S, were tried together before the court, *Spader*, *J.*, in 2022.[5] On November 17, 2022, the court issued a memorandum of decision, stating: "The . . . cases are all essentially claims that any right or privilege the defendants had to occupy the respective premises has terminated. . . .

"The defendants provide similar defenses in all matters alleging that the plaintiff has not properly performed under an alleged life estate the defendants maintain in the premises, that the notices to quit are defective because the defendants have life estates and that these evictions are inequitable/unconscionable. The defendants claim by way of counterclaim that they should receive an injunction against forfeiture because of repairs they performed and/or work performed at substandard wages to the benefit of the Freccia family. . . .

"As an initial matter, before considering the special defenses or counterclaims, the court has to consider

---

[5] The record reflects that the trial court dismissed the summary process action brought under Docket No. CV-21-6006603-S, and no appeal was taken from that dismissal. See *Freccia* v. *Freccia*, Superior Court, judicial district of Stamford-Norwalk, Housing Session, Docket No. CV-21-6006603-S. The record further reflects that the trial court rendered judgment in favor of the plaintiff in the summary process action brought under Docket No. CV-21-6006597-S. See *Freccia* v. *Doe*, Superior Court, judicial district of Stamford-Norwalk, Housing Session, Docket No. CV-21-6006597-S. Although the defendants in that action filed an appeal from the judgment, this court dismissed the appeal on April 4, 2024.

whether the plaintiff has set forth her case for right or privilege terminated. To prevail on such claim, the plaintiff must establish, by a fair preponderance of the evidence, the following essential elements: (1) that the plaintiff is the lessor or owner of the various premises individually or as executor; (2) that the defendants originally had the right to occupy but that right has been terminated; (3) the service of the proper notices to quit and its service date and termination date; and (4) that the defendants are still in possession of the various premises.

"The plaintiff has established, by a fair preponderance of the evidence, her ownership individually or as executor of all of the subject premises; her unequivocal desire to regain possession through the service of legally compliant notices to quit with service and termination dates; that the dates have passed with the occupants still being in possession and her right to regain possession.

"Despite the plaintiff setting forth her cases, the court still needs to consider the special defenses of the defendants.

"The common argument is inequitability—that the plaintiff has not performed properly her obligations to acknowledge a life estate in all of the defendants and/or invalid notices to quit because of the so-called life estates.

"A life estate, as with any interest in land, can only be enforceable against subsequent owners/encumbrancers if they are properly documented in a writing and recorded on the land records. The defendants have not established the legal existence of any life estates. Even if there is an argument that there was a constructive trust or constructive life estate based upon promises from [the decedent] to his son and grandchildren, the court

does not find the existence of any such lifetime promises. . . .

"The evidence presented to the court did not indicate that [the decedent] conveyed, or intended to convey, the ownership of any of the parcels in question in this matter to his children/grandchildren in occupancy thereof. He did not leave any instructions to the plaintiff to allow possession 'forever' to any defendants herein. There is no unjust enrichment to the plaintiff individually, or to the estate for the plaintiff to pursue these actions.

"The defendants all commonly testified to their belief that these premises would be their 'lifetime/forever homes' in convenient memories after [the decedent's] passing. His will/the actual written trusts unequivocally conveyed these properties to the plaintiff (either individually or in trust) without a reservation for the defendants. Even had there been a promise, even implicitly, to benefit the defendants, it could not extend beyond [the decedent's] life.

"The defendants did some repairs—to upkeep the premises they were occupying. The court does not believe that they thought they could just live there forever with their mother/mother-in-law/grandmother footing all of the taxes/insurance, etc.

"Specifically, as to . . . D'Andrea, the testimony of his fiancée as to his acceptance of substandard pay from the garage thinking he was being compensated with a home lacks credibility. If he wasn't happy with his pay, or he thought [the decedent] was violating labor laws (and now Frank is violating labor laws) he had recourse therein by filing a lawsuit . . . or a Department of Labor claim, not by living in a property owned by [the plaintiff] for life—whoever's life we are referring to.

"As to the garage, if [Frank] truly believed he had a right to stay at the property forever without payment, why would he execute the 2019 lease? It was not because of duress, but because he knew he had no continual ongoing right and his arguments that he has a forever right to possession without compensation are just a convenient legal theory now that the plaintiff is seeking possession.

"The defendants' brief is correct in that the court has struggled in reexamining the testimony on multiple occasions and reviewing these cases frequently in considering this decision. There are certainly credibility issues with EVERY witness that testified—the plaintiff not exempted. When there are credibility issues, that creates more weight in the actual written documents and the conveyances by [the decedent], the trust and the wills. They simply do not create life estates in the defendants nor instruct the plaintiff to forever provide living expenses and upkeep for the defendants. [The decedent] could have done so, and he did not, leaving the decision-making ability to the plaintiff. The conveyances were not done under duress in a hospital bed, but years, and in one case a decade and a half, before his death. The court is aware of the testimony regarding the friction in the family between the plaintiff and the defendants that may not be present in other branches of the family. This friction existed when [the decedent] was alive, and he had the opportunity to provide for the defendants but chose not to.

"Equitable factors are always considered by this court. This is a long-standing family dispute. Equity does not provide a defense to overcome the plaintiff's cases but shall provide a stay of execution for the defendants. Final stays are entered in all matters for March 31, 2023.

"The defendants also counterclaim seeking injunctive relief against the plaintiff from proceeding herein; the

defendants have not prevailed by a fair preponderance of the evidence on their counterclaims. There simply is no credible support for their life estate theories." These appeals followed.

I

AC 46037

A

First, the defendants in AC 46037 claim that the plaintiff lacked standing to commence the underlying summary process action.[6] We are not persuaded.

The fact that this standing claim is being raised for the first time on appeal is of no consequence to our analysis "because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and [the issue of standing] may be raised at any time." *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 126, 74 A.3d 1225 (2013). It is undisputed that the plaintiff, in her individual capacity, owns 50 percent of the subject property. The remaining 50 percent was owned by her husband, the decedent, until

---

[6] In their appellate reply brief, the defendants in AC 46037 raise a distinctly different legal claim, one that was raised in connection with AC 46038 and does not apply to the facts of the underlying case. Specifically, they claim that the notice to quit served on them was invalid because it listed the plaintiff, in her capacity as executor, therein as owner. According to the defendants, the plaintiff was not the owner of the subject property in her representative capacity, but in her individual capacity. "It is axiomatic that a party may not raise an issue for the first time on appeal in its reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.) *Asnat Realty, LLC* v. *United Illuminating Co.*, 204 Conn. App. 313, 329, 253 A.3d 56, cert. denied, 337 Conn. 906, 252 A.3d 366 (2021). We therefore decline to review this claim.

the time of his death. The decedent appointed the plaintiff as the executor of his will. The estate had not been closed by the time of the trial. By the terms of his will, his ownership interest in the subject property ultimately is to pass to the Frank J. Freccia, Jr., Revocable Trust (trust). The plaintiff is one of the trustees of the trust.

The defendants acknowledge that, as executor, the plaintiff "has . . . the authority to take the assets of the estate into her possession and administer them to the point of distribution." The defendants also acknowledge that, under the terms of the trust, the trustees have authority to dispose of trust assets. The defendants argue that, by commencing the present summary process action, however, the plaintiff is imperfectly performing her obligations under both the will and the trust of the decedent, thereby violating her obligation to "preserve and maintain the assets for the beneficiaries [of those instruments]," including the defendant Guin. Essentially, the defendants argue that the plaintiff, by commencing the summary process action, violated her fiduciary duties as a representative of the estate in that the action served her self-interests and was not acting in the best interests of the estate.

The plaintiff alleged in her revised complaint that the defendants originally had a right or privilege to occupy the subject property but that such right or privilege had been terminated by service of a notice to quit on July 23, 2021. "In a summary process action based on the plaintiff's claim that the defendant originally had the right or privilege to occupy the premises but that any such right or privilege has terminated, the plaintiff must prove, by a fair preponderance of the evidence, all the elements of the case. The essential elements are: (1) the plaintiff is the owner of the property; (2) the defendant originally had a right or privilege to occupy the premises but such right or privilege has terminated; (3) the plaintiff caused a proper notice to quit possession to be

served on the defendant to vacate the premises on or before a certain date; and (4) although the time given the defendant to vacate in the notice to quit possession has passed, the defendant remains in possession of the premises. See General Statutes § 47a-23 (a) (3).

"As a threshold issue, in order to prevail, the plaintiff must prove the essential element of ownership of the premises, which implicates standing. It is well established that [a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction . . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he . . . has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .

"Section 47a-23 (a) provides in relevant part: When the owner . . . desires to obtain possession or occupancy of any land . . . and . . . (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner . . . shall give notice to each . . . occupant to quit possession or occupancy of such land . . . before the time specified in the notice for the lessee or occupant to quit possession or occupancy. General Statutes § 47a-1 (e) defines owner as one or more persons, jointly or severally, in whom is vested (1) all or part of the legal title to property, or (2) all or part of the beneficial ownership and a right to present use and enjoyment of the premises and includes a mortgagee in possession. Vested is defined as [h]aving become a completed, consummated right for present or future enjoyment; not

contingent; unconditional; absolute. Black's Law Dictionary (9th Ed. 2009) p. 1699.

"Where a plaintiff issuing a notice to quit is not the owner of the property when the notice to quit is served, the notice to quit is defective, which deprives the court of subject matter jurisdiction. Before the [trial] court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with notice to quit. . . . As a condition precedent to a summary process action, proper notice to quit [pursuant to § 47a-23] is a jurisdictional necessity." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Success, Inc.* v. *Curcio*, 160 Conn. App. 153, 159–61, 124 A.3d 563, cert. denied, 319 Conn. 952, 125 A.3d 531 (2015).

"Standing . . . is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citations omitted; internal quotation marks omitted.) *North Branford Citizens Against Bulk Propane Storage* v. *North Branford*, 230 Conn. App. 335, 342–43, 330 A.3d 196 (2025). "The general rule is that one party has no standing to raise another's rights. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue

. . . . [Standing is] ordinarily held to have been met when a complainant makes a colorable claim of direct injury he . . . is likely to suffer . . . .” (Citations omitted, internal quotation marks omitted.) *Delio* v. *Earth Garden Florist, Inc.,* 28 Conn. App. 73, 78, 609 A.2d 1057 (1992).

The court found that “[t]he plaintiff ha[d] established, by a fair preponderance of the evidence, her ownership individually or as executor of all of the subject premises . . . .” Insofar as the defendants challenge the propriety of this conclusion, we note that it was not in dispute that the plaintiff, in her individual capacity, has a 50 percent ownership interest in the subject property. As stated previously, under the terms of the decedent's will, which are not in dispute, the executor has the explicit authority “[t]o retain, acquire, or sell any property . . . .” This provision undermines the defendants' argument that, “as execut[or], [the plaintiff] has only the authority to take the assets of the estate into her possession and administer them to the point of distribution.”[7]

Simply put, the defendants' arguments do not implicate the plaintiff's status with respect to the subject

---

[7] Similarly, under the terms of the trust, which are not in dispute, the trustee has the explicit authority “[t]o retain, acquire, or sell any property . . . .” The terms of the trust further provide: “The [t]rustee is authorized to hold residential real property as part of any trust created under this [a]greement and shall permit the income beneficiary or eligible income beneficiaries to reside there rent-free during the trust term. The [g]rantor, and after the [g]rantor's death, the [g]rantor's spouse if the [g]rantor's spouse is the income beneficiary or an eligible income beneficiary, may at any time direct that such residential property shall be sold. In the event of [a] sale, all or any part of the proceeds thereof may, in the discretion of the [g]rantor, or, after the [g]rantor's death, the [g]rantor's spouse if the [g]rantor's spouse is the income beneficiary or an eligible income beneficiary, be applied to the acquisition of other real property, which, together with any such proceeds not so applied, shall be held in such trust upon the same terms and conditions.”

property or, more specifically, her authority in her representative capacity to vindicate ownership rights over the property on behalf of the estate. Instead, the defendants' argument conflates the issue of the plaintiff's standing to bring the summary process action with the issue of whether the plaintiff, either in her role as executor of the decedent's will or trustee of the trust established by the decedent, is properly exercising her duties under the will and trust. We agree with the plaintiff that the narrow issue before us in terms of standing is whether the plaintiff, in her representative capacity, had the right to seek possession of the subject property by commencing the present summary process action. This issue is legally distinct from whether her conduct in bringing the action was in derogation of her duties as executor or as trustee. On the basis of the undisputed facts, we hold that the plaintiff had the legal right to seek possession of the subject property and, accordingly, had standing to commence the underlying action.

B

Next, we address the claim raised by the defendants in AC 46037 that the court improperly failed to conclude that they had a present right to remain in the subject property or that equitable considerations precluded the plaintiff from obtaining judgment in her favor.[8] We are not persuaded.

---

[8] We note that, in this part I B of the opinion, we have combined multiple interrelated claims raised by the defendants in AC 46037 into a single claim. We have done so in the interest of efficiently addressing the interrelated claims. In their principal appellate brief, the defendants claimed that (1) "[e]quitable considerations preclude the plaintiff from evicting her son and the generational family business from its long maintained location," (2) "[t]he uncontradicted and documentary evidence establishes that both an actual and an equitable or constructive trust has arisen in favor of [Guin], with respect to the subject premises pursuant to the will and trust [of the decedent]," and (3) "[t]he evidence establishes [Guin's] right to remain in the family business premises based upon estoppel."

"On appeal, the function of this court is limited solely to the determination of whether the factual findings of the trial court are clearly erroneous or whether the decision is otherwise erroneous in law. . . . Determining whether a trial court's decision is clearly erroneous involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Haynes Construction Co.* v. *Cascella & Son Construction, Inc.*, 36 Conn. App. 29, 32, 647 A.2d 1015, cert. denied, 231 Conn. 916, 648 A.2d 152 (1994). "The determination of whether an equitable doctrine applies in a particular case is a question of law subject to plenary review." *Walpole Woodworkers, Inc.* v. *Manning*, 307 Conn. 582, 588, 57 A.3d 730 (2012).

The defendants set forth three interrelated arguments. First, they argue that Guin has "at least equitable title in the subject property as beneficiary under the will and trust [of the decedent]. [She] also owns at least an equitable right to occupy the [subject] premises throughout the duration of the trust term pursuant to article V of the trust." The defendants further argue that, pursuant to the trust, the plaintiff "has no power to dispossess [Guin] from the subject real estate." In rejecting these arguments, the court found that the evidence did not support a finding that the decedent intended to create in any of the defendants a right to occupy any of the premises passed from his will to his trust. The court emphasized that none of the testimonial

evidence "create[d] life estates" in any of the defendants and that it was appropriate in this case to focus on the will and the trust as the clearest expression of the intent of the decedent. It is particularly persuasive that article VI, paragraph B, of the trust, captioned "Discretionary Termination of Trust," provides: "The [g]rantor recognizes that there may be circumstances in which it is not in the best interests of the income beneficiary of a trust established hereunder to continue such trust in existence, taking into account all relevant factors, including the costs of administration and any tax benefits or lack thereof. Accordingly, after the [g]rantor's death, the [t]rustee is authorized in its discretion and for any reason to terminate the trust and distribute any remaining trust property to the income beneficiary. In exercising its discretion, the [t]rustee shall have no obligation to consider the interests of any other person in the trust."[9] As the court correctly recognized on the basis of the undisputed evidence of the estate plan of the decedent, he could have provided greater rights in the defendants as beneficiaries of his will and trust, but he did not do so.[10]

[9] The defendants in AC 46037 attach great importance to article IX, paragraph V, of the trust, which provides in relevant part: "The [t]rustee is authorized to hold residential real property as part of any trust created under this [a]greement and shall permit the income beneficiary or eligible income beneficiaries to reside there rent-free during the trust term. . . ." The defendants, however, fail to acknowledge the very next sentence of that section, which clearly reflects that the plaintiff, in her discretion, had the authority to sell any residential real property, by providing: "The [g]rantor, and after the [g]rantor's death, the [g]rantor's spouse if the [g]rantor's spouse is the income beneficiary or an eligible income beneficiary, may at any time direct that such residential property shall be sold."

[10] We briefly respond to the defendants' reliance in AC 46037 on our Supreme Court's decision in *Gaynor* v. *Payne*, 261 Conn. 585, 804 A.2d 170 (2002), which they assert is " 'on all fours' " with the claim before us. In *Gaynor*, our Supreme Court concluded that a decedent's grandchildren, who were contingent remaindermen by virtue of a trust established by the decedent's will, nonetheless held legally cognizable property interests in the decedent's estate. Id., 592–93. Therefore, the court concluded, their rights to bring an action against the former executor of the decedent's estate for mismanagement were not extinguished by a release executed by the

Second, the defendants argue that the circumstances compel the conclusion that Guin is the beneficiary of "a classic constructive trust" based on promises and assurances made to her by the decedent. "The elements of a constructive trust are the intent by a grantor to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property. A constructive trust is created by operation of law when these elements are present." *Gulack* v. *Gulack*, 30 Conn. App. 305, 310, 620 A.2d 181 (1993). Here, the court specifically found that the defendants had not proven the existence of any "lifetime promises" whereby the defendants were promised the right to occupy the subject premises beyond the lifetime of the decedent. The court also found that the defendants did not present evidence indicating that the decedent had "conveyed, or intended to convey, the ownership of any of the parcels in question in this matter to his children/grandchildren in occupancy thereof." As the court explained, there was no evidence that the decedent had "[left] any instructions to the plaintiff to allow possession 'forever' to any [of the] defendants herein." As we have stated previously in this opinion, the fact that the trust clearly afforded the trustee the discretion to terminate the trust for the sole benefit of the plaintiff, as income beneficiary, and to

decedent's children alone, in favor of the former executor. Id., 594. The issue addressed in *Gaynor* is not analogous to the issue before us. We are being asked to determine whether equitable considerations barred the plaintiff from being awarded immediate possession of the subject property, not whether the defendants properly may commence an action against the plaintiff in her role as executor or trustee. We do not conclude that any of the defendants who are beneficiaries under the will or trust lack interests in the subject property; instead, we conclude that such interests do not preclude the plaintiff from obtaining immediate possession of the subject property.

do so with "no obligation" to consider any other beneficiary of the trust, undermines the argument that the court should have recognized the existence of a constructive trust.

Third, the defendants argue that the doctrine of promissory estoppel required a determination that Guin was entitled to remain in the family business. "[U]nder the doctrine of promissory estoppel, [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all. . . . Further, the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future. . . . [A] mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance . . . . Additionally, [a]side from demonstrating the existence of a clear and definite promise, a plaintiff asserting a claim of promissory estoppel must also establish two additional elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge."

(Citation omitted; internal quotation marks omitted.) *TD Bank, N.A.* v. *Salce,* 175 Conn. App. 757, 766–67, 169 A.3d 317 (2017).

In this appeal, the defendants argue, as they did before the trial court, that, by seeking possession of the subject property, the plaintiff is denying them benefits that they had bargained for with the decedent. The defendants also argue that the plaintiff is "upending" the decedent's estate plan. Moreover, the defendants argue that they are entitled to equitable relief on the basis of what they consider to be "uncontradicted" evidence that the decedent had made various promises and assurances to them over the years with respect to their right to remain in the subject premises following his death. In furtherance of these arguments, however, the defendants merely rely on testimony that the court found not to be credible. Specifically, the defendants attempted to demonstrate through testimonial evidence that the decedent had promised them that they could remain in the subject premises beyond his death, that they had relied on such representations to their detriment, and that D'Andrea accepted substandard pay in exchange for the right to remain at the subject premises beyond the lifetime of the decedent. The court did not find this testimony credible.

The defendants do not explicitly suggest that this court should second-guess the trial court's credibility determinations, and it is not our role to do so. Indeed, we could only set aside the court's factual findings flowing from those determinations upon a showing that they are clearly erroneous, and the defendants have not met that burden. See *Haynes Construction Co.* v. *Cascella & Son Construction, Inc.,* supra, 36 Conn. App. 32. Moreover, for reasons already discussed in this opinion, the will and the trust support a finding that the decedent had not intended to benefit the defendants following his death with continued occupancy of the

subject residence, as those instruments do not reflect that the decedent had contemplated such an outcome.

C

The defendants in AC 46037 also claim that the court abused its discretion and prejudiced them by consolidating for trial the action underlying this appeal with four other related summary process actions brought by the plaintiff in either her individual or representative capacity. We decline to reach the merits of this claim, as it is unpreserved.

The defendants argue that the court's decision to consolidate the summary process actions was made without any "significant consideration at all" and that it resulted in a "procedural 'mishmash' . . . ." They also argue that the ruling was prejudicial because, despite the fact that the cases were related in that they were all summary process cases brought by the plaintiff against family members and there was uniformity of counsel (and, to some degree, uniformity of defenses) with respect to the cases consolidated, in light of "the complexities of the matter, the differences between the parties, the differences between legal theories, and the potential antagonism between various claims and defenses . . . consolidation was inappropriate and . . . [was an] abuse of discretion."

The plaintiff challenges the reviewability of this claim on the ground that it was not distinctly raised before the trial court. "It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial. . . . [O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the

opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . [T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court [and the opposing party] on reasonable notice of that very same claim." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Lowthert* v. *Freedom of Information Commission*, 220 Conn. App. 48, 56–57, 297 A.3d 218 (2023).

At the outset, we note that the same attorney represented all of the defendants in these related summary process actions. The defendants submit that their attorney expressly objected to the court's decision to consolidate the related cases. Our review of the record reflects that, at the very beginning of the trial, after the court expressed its belief that it would be "easier" to hear all of the cases at once, the plaintiff's attorney acquiesced in this view by noting his opinion that the cases reflected a "uniformity of defense . . . ." The defendants' attorney responded to that observation as follows: "I understand the . . . desire and the need to conserve judicial resources. I am concerned that . . . these cases do stand on their facts separately though [and that] the defenses are similar in three of the four cases, but there are factual distinctions and there may be some overlap as my brother [counsel] has indicated, but there are some very clear distinctions . . . ." The court responded, "then I have unlimited judicial resources for you, counsel." The defendants' counsel replied, "Thank you, Your Honor."

The statements made by the defendants' attorney appear to have been a response to the opinion expressed by the plaintiff's attorney that the defenses in the various actions were factually indistinct or that there was

a uniformity of defense in the consolidated cases. The defendants' attorney, however, did not distinctly challenge the court's ruling to consolidate. Although it is not dispositive that the defendants' attorney did not use the word "objection," it is nonetheless significant that he did not refer to the court's ruling, did not ask the court to reconsider its ruling, did not proffer any legal arguments as to why consolidation was improper, and did not identify any prejudice that the ruling might have caused his clients. The defendants' attorney set forth his belief, which is reasonable, that each case should be considered on its own merits. It does not appear that the plaintiff's attorney considered this belief to have risen to the level of an objection to the court's ruling, for the plaintiff's attorney did not respond. Moreover, once the court reassured counsel that it was up to the task of devoting appropriate attention to each distinct case, the defendants' attorney thanked the court, which reasonably reflected that his concerns had been addressed to his satisfaction. On this record, we do not conclude that the defendants' attorney articulated with sufficient clarity before the trial court the appellate claim that he presently advances before this court. The defendants have not demonstrated that this claim warrants an extraordinary level of review, and, thus, we decline to review it.[11]

---

[11] Embedded within their briefing with respect to this unpreserved claim, the defendants in AC 46037 have raised an additional claim in which they argue that the court prejudiced them by requiring counsel to file "a single posttrial brief encompassing all five cases" and that the court improperly limited posttrial briefs to no more than fifteen pages, in derogation of Practice Book § 4-6. The defendants presently argue that these "orders" amounted to an abuse of the court's discretion. The defendants do not direct our attention to what portion of the record reflects these orders. Assuming, arguendo, that we *have* a record of these orders, it appears that the defendants are challenging them for the first time on appeal. The defendants have not identified when they objected, and we are unable to verify, on the basis of our review of the voluminous record that they objected to these orders at trial, the distinct grounds for their objection, and the nature of the court's response. This court, relying on *Dur-A-Flex, Inc.* v. *Dy*, 349 Conn. 513, 589–90, 321 A.3d 295 (2024), recently has stated that "it is the responsibility

## II

## AC 46038

## A

First, we address the claim raised by the defendants in AC 46038 that the notice to quit served on them was invalid. We are not persuaded.

The following additional factual and procedural history is relevant to this appeal. It is not in dispute that the notice to quit served on the defendants was signed by Mark A. Sank, who is identified on the notice to quit as the attorney for "Theresa K. Freccia, Executor."[12] The original complaint was brought by "Theresa K. Freccia, executor of the estate of Frank J. Freccia, Jr." The

---

of parties, not an appellate court, to clearly identify how and where in the record the claim that the party is raising on appeal was preserved for review and where in the record the trial court's ruling on the claim may be found . . . . That is especially true in a case . . . in which the pleadings are voluminous. We, therefore, decline to review this claim." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State ex rel. Dunn* v. *Burton,* 229 Conn. App. 267, 294, 327 A.3d 982 (2024). This court's rationale in *Burton* applies equally to the claim before us. Relying on the authority discussed in this opinion, and because the defendants have not demonstrated that they are entitled to an extraordinary level of review of this unpreserved claim, we decline to reach its merits.

[12] The notice to quit provides: "I hereby give you notice that you are to quit possession of the premises located at 40 Locust Street, Building 2 and Garage now occupied by you, on or before September 19, 2021, for the following reasons:

"-Nonpayment of Rent

"-Lapse of Time

"-You never had a right or privilege to occupy the premises or any part thereof

"-You originally had a right or privilege to occupy the premises, or any part thereof, but such right or privilege has terminated

"**All payments tendered after service of this Notice to Quit will be accepted as use and occupancy, attorney's fees and costs without waiving any rights to proceed with an eviction action.**

"Dated at Stamford, Connecticut this 13th day of August, 2021.

"Theresa K. Freccia, Executor

"By Mark A. Sank, Her Attorney."

revised complaint identifies the plaintiff in the same manner. The record reflects that, on February 10, 2022, the plaintiff filed a motion to substitute party plaintiff and to amend the revised complaint to substitute herself, in her individual capacity, as the party plaintiff in light of the fact that the subject property was held jointly between the plaintiff and the decedent with rights of survivorship. The plaintiff represented that, upon the decedent's death in 2018, she became the sole owner of the property. On February 14, 2022, the court granted the motion.

The defendants argue that "[t]he undisputed evidence in this case is that the property known as 40 Locust [Street], Greenwich . . . was conveyed to [the decedent] and [the plaintiff] jointly with rights of survivorship on July 2, 1979. . . . Further, a purported lease with respect to the premises, dated June 1, 2019, was entered into evidence. The landlord on that lease was 'Theresa K. Freccia.' . . . In other words, everyone was well aware that the property was never a part of [the decedent's] estate.

"The . . . notice to quit [served on the defendants in this summary process action] was signed by counsel on behalf of the 'Executor of the estate of Frank J. Freccia, Jr.' The estate was never an owner or manager or attorney for the owner of 40 Locust [Street]. As such, the notice to quit is defective on its face." (Citations omitted.)

The defendants further argue that, once the plaintiff recognized that the wrong party had initiated the summary process action, "it was not enough to merely substitute [the plaintiff] personally in lieu of the estate. A new notice to quit needs to be served. . . . The failure to serve a notice to quit in the name of the actual owner of the premises renders it defective and invalid." (Citation omitted.) The defendants contend that, "[because]

the notice to quit in this case is defective on its face, and since a valid notice to quit is a jurisdictional prerequisite to the case, both the Superior Court and this Appellate Court lack subject matter jurisdiction to entertain the matter."[13]

The plaintiff counters that the defendants are challenging the validity of the notice to quit for the first time in this appeal and, thus, that the claim should not be reviewed. Alternatively, the plaintiff argues that the alleged defect did not implicate the subject matter jurisdiction of the trial court and that the notice to quit was not necessarily defective in the manner argued because, pursuant to § 47a-23 (a), the notice need only have included the name of the owner's legal representative, attorney-at-law, or attorney-in-fact, and "it is impossible to know whether the court considered [Sank], who indisputably issued and signed the notice to quit, [as] the attorney-at-law for the owner [of the subject property], [the plaintiff in her individual capacity], or for the lessor [of the subject property], [the plaintiff as executor of the decedent's estate], or for both."

---

[13] The defendants' argument in AC 46038 is peculiar in that they argue that this court lacks subject matter jurisdiction over an appeal that they themselves brought before this court. It cannot be disputed that, if this court lacks subject matter jurisdiction over their appeal, the proper course of action would be for this court to dismiss the appeal. See, e.g., *T.P. Brewer Construction Co.* v. *F & G Associates*, 34 Conn. App. 714, 716, 643 A.2d 308 (1994) ("[b]ecause this court lacks jurisdiction to hear the appeal, we must dismiss the appeal"). It follows, therefore, that in the absence of appellate jurisdiction, we would be incapable of providing the defendants the remedy that they explicitly ask us to afford them, namely, to vacate the underlying judgment granting the plaintiff possession of the subject property and to direct the trial court to dismiss the action.

The arguments raised by the defendants call into question whether the plaintiff properly invoked the jurisdiction of the trial court, but they do not call into question whether this court has jurisdiction to hear the present appeal from the final judgment rendered by the trial court in favor of the plaintiff. See *Herasimovich* v. *Wallingford*, 149 Conn. App. 325, 327 n.2, 87 A.3d 1177 (2014) ("[t]his court has jurisdiction over any final judgment of the Superior Court even if that court lacked jurisdiction").

First, we address the plaintiff's contention that the claim is unreviewable because the defendants did not raise it before the trial court. As we discussed in part I A of this opinion, "[s]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . .

"There is no doubt that the Superior Court is authorized to hear summary process cases; the Superior Court is authorized to hear all cases except those over which the probate courts have original jurisdiction. . . . The jurisdiction of the Superior Court in summary process actions, however, is subject to [certain] condition[s] precedent. . . . Our Supreme Court has stated that [a]s a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity. . . . Simply put, before a landlord may pursue its statutory remedy of summary process, the landlord must prove compliance with all of the applicable preconditions set by state and federal law for the termination of the lease. . . .

"In general, the conditions that must be met prior to the commencement of a summary process action are set forth in § 47a-23. To invoke the court's subject matter jurisdiction over a summary process action, a landlord must therefore, at a minimum, prove compliance with § 47a-23, which requires a landlord seeking to terminate a lease or rental agreement for serious nuisance to deliver to the occupant or lessee a notice to quit possession. In contrast to a pretermination notice, which provides the tenant with an opportunity to remedy violations and does not terminate a tenancy, service of a notice to quit possession pursuant to § 47a-23 is typically an unequivocal act terminating a lease agreement with a tenant. . . . The notice to quit must be in writ-

ing, notify the tenant that the tenant must quit possession or occupancy of the premises on a specified date, include the address of the property, and state the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import. General Statutes § 47a-23 (b).

"It follows that, for purposes of determining whether it had subject matter jurisdiction over [a] . . . summary process action, [a trial] court . . . need[s] to determine only whether the notice to quit issued by [a] plaintiff complied with § 47a-23. . . .

"[T]o establish subject matter jurisdiction, the court must determine that it has the power to hear the general class [of cases] to which the proceedings in question belong." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Housing Authority* v. *Stevens*, 209 Conn. App. 569, 577–79, 267 A.3d 927, cert. denied, 343 Conn. 907, 273 A.3d 234 (2022).

Ordinarily, "[o]nly in [the] most exceptional circumstances can and will [an appellate] court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . A claim that a court lacks subject matter jurisdiction, however, may be raised at any time during the proceedings, including for the first time on appeal." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Mangiafico* v. *Farmington*, 331 Conn. 404, 429–30, 204 A.3d 1138 (2019). Accordingly, we are not persuaded that the defendants' claim is not reviewable.

Second, we turn to the merits of the claim, which, consistent with the principles set forth previously in this opinion, may be distilled to the issue of whether the plaintiff strictly complied with § 47a-23.[14] We are

---

[14] General Statutes § 47a-23 provides in relevant part: "(a) When the owner or lessor, or the owner's or lessor's legal representative, or the owner's or lessor's attorney-at-law, or in-fact, desires to obtain possession or occupancy of any land or building, any apartment in any building, any dwelling unit, any trailer, or any land upon which a trailer is used or stands, and (1) when

guided in our resolution of this claim by the legal principles set forth and this court's analysis in *U.S. Bank National Assn.* v. *Karl*, 128 Conn. App. 805, 18 A.3d 685, cert. denied, 302 Conn. 909, 23 A.3d 1249 (2011), a case on which the plaintiff relies. In *U.S. Bank National Assn.*, the defendants in a summary process action filed a motion to dismiss in the trial court on the ground that the notice to quit that had been served on them was improper for failure to name the landlord or owner of the subject property, thereby depriving the court of subject matter jurisdiction. Id., 807. The trial court denied the motion to dismiss and rendered a judgment of possession in favor of the plaintiff. Id., 807–808.

On appeal to this court, the defendants in *U.S. Bank National Assn.* claimed that the notice to quit was defective and, thus, that the court improperly denied the motion to dismiss. Id., 806, 808. This court set forth

a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons: (A) By lapse of time . . . or (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner or lessor, or such owner's or lessor's legal representative, or such owner's or lessor's attorney-at-law, or in-fact, shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit, at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy.

"(b) The notice shall be in writing substantially in the following form: 'I (or we) hereby give you notice that you are to quit possession or occupancy of the (land, building, apartment or dwelling unit, or of any trailer or any land upon which a trailer is used or stands, as the case may be), now occupied by you at (here insert the address, including apartment number or other designation, as applicable), on or before the (here insert the date) for the following reason (here insert the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import, also the date and place of signing notice). A.B.'. If the owner or lessor, or the owner's or lessor's legal representative, attorney-at-law or attorney-in-fact knows of the presence of an occupant but does not know the name of such occupant, the notice for such occupant may be addressed to such occupant as 'John Doe', 'Jane Doe' or some other alias which reasonably characterizes the person to be served. . . ."

relevant principles, stating: "Before the [trial] court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with notice to quit. . . . As a condition precedent to a summary process action, proper notice to quit [pursuant to § 47a-23] is a jurisdictional necessity. . . . This court's review of the trial court's determination as to whether the notice to quit served by the plaintiff effectively conferred subject matter jurisdiction is plenary. . . .

"We further observe that [s]ummary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) Id., 808–809.

The court then addressed the merits of the claim, stating: "The text of § 47a-23 is clear and unambiguous. The legislature used language indicating that notice shall be given by 'owner or lessor, or the owner's or lessor's legal representative, or the owner's or lessor's attorney-at-law, or in-fact.' In fact, three times in this statutory section, the legislature identified 'the owner's or lessor's legal representative, or the owner's or lessor's attorney-at-law, or in-fact' as one category of individuals authorized by the statute to provide notice. The use of the word 'or' in § 47a-23, instead of 'and,' suggests 'in the alternative.' Because the owner and the owner's legal representative both are included in the specific array of possible individuals who might give notice, we cannot see how the statute as written requires that the notice to quit reflect both the owner's identity and the

identity of the owner's legal representative, attorney-at-law or attorney-in-fact.

"Furthermore, if, in contemplating the content of the notice to quit, the legislature considered the identity of the owner to be necessary, it could have included such requirement in the list of information under § 47a-23 (b) where it provides that 'notice shall be in writing substantially in the following form . . . .' It is well settled that '[w]e are not permitted to supply statutory language that the legislature may have chosen to omit.' " (Emphasis omitted; footnote omitted.) Id., 809–10.

In the present case, it is not disputed that in these related summary process actions, Sank represented the plaintiff, both in her individual capacity and in her representative capacity in connection with the estate of the decedent. Although the notice to quit in the underlying action identified the party who brought the notice to quit as "Theresa K. Freccia, Executor," the notice was signed by Sank as "[h]er [a]ttorney." The notice did not expressly identify the owner of the subject premises, let alone state that the estate was the owner. The notice, however, identified Sank, the attorney-at-law for the owner, the plaintiff. The fact that the notice stated that it was being brought by the plaintiff as "[e]xecutor" did not detract from the fact that it identified Sank who was the plaintiff's attorney. Because it cannot be disputed that the notice to quit accurately identified the owner's attorney-at-law, we do not conclude that it failed to comply with § 47a-23, despite the fact that it did not also accurately identify the owner. As *U.S. Bank National Assn.* instructs, it is unnecessary for the owner to be identified as long as the owner's attorney-at-law, attorney-in-fact, or legal representative is identified in the written notice to quit; *U.S. Bank National Assn.* v. *Karl*, supra, 128 Conn. App. 809–10;[15] as

[15] The defendants in AC 46038 argue that the present claim is governed by this court's decision in *Success, Inc.* v. *Curcio*, supra, 160 Conn. App. 153. The defendants in *Success, Inc.*, appealed from a judgment of immediate

occurred here. Accordingly, we conclude that the plaintiff properly invoked the court's subject matter jurisdiction.

## B

Next, the defendants in AC 46038 claim that the court improperly failed to conclude that equitable considerations precluded the plaintiff from obtaining judgment in her favor. We are not persuaded.

The defendants argue, first, that "an equitable or constructive trust has arisen in favor of Frank and Tammie . . . regarding their home by virtue of promises and assurances made by [the decedent] and the plaintiff." The defendants argue: "[The decedent] made promises and assurances to Frank that he would always be taken care of. Did Frank and Tammie not order their lives in reliance on these assurances? Frank and Tammie clearly believed, based on the promises made by Frank's parents and elders that he would live in his home at 40 Locust Street, for life, always, following the traditions of his father, grandfather, and great grandfather before him. . . . Frank went to college, but only for a short time; instead, he worked as a mechanic for the generational family auto business . . . from which he earned wages well below market rates for decades . . . . He works there, continuing the family business, to this day.

"Frank and Tammie expended time and exerted physical labor to perform major renovations to the home, as proved in testimony and photographs . . . . Frank

possession rendered in a summary process action, claiming that the plaintiff lacked standing to pursue the action because it was not the legal owner of the subject premises. Id., 154–55. This court reversed the judgment of the trial court after concluding that the court's finding that the plaintiff sufficiently proved its legal ownership of the subject premises was clearly erroneous. Id., 179. *Success, Inc.*, however, unlike the present case, did not involve a situation in which a notice to quit accurately set forth the attorney-at-law for the undisputed owner of the subject premises. Thus, *Success, Inc.*, does not alter our conclusion that the defendants' claim is not persuasive.

raised his family in the house his parents gave him, promised him by his father and mother to be his for life. Not once was there ever an effort to evict Frank or move him from his home at 40 Locust Street, before [the decedent] died in January of 2018. Frank would ask his father about life insurance and financial questions, getting retirement accounts, and [the decedent] told [him], 'no, you'll always have the land.' " (Citations omitted.) The defendants also rely on what they believe to have been statements made by the plaintiff "encouraging them" to move into the residence at 40 Locust Street. The defendants argue that Tammie's testimony demonstrates that the decedent, Frank, and Tammie "agreed" that Frank would "dedicate his life to working at the garage" and that his family could live at 40 Locust Street " 'forever.' " (Emphasis omitted.)

Second, relying on the same alleged facts, the defendants argue that the doctrine of promissory estoppel applied in the present case because the evidence demonstrated that the decedent had fabricated a "global plan" on which they relied. In other words, the defendants argue that the decedent led them to believe that they would enjoy rights over the subject property, the defendants relied on those representations, and the plaintiff now seeks to bar them from enjoying what had been promised to them.

The arguments raised by the defendants in this appeal are similar to arguments that were raised by the defendants in AC 46037 and addressed in part I B of this opinion. It would serve no useful purpose to reiterate the legal principles set forth therein, which likewise govern this claim. Moreover, although the defendants in the present appeal rely on evidence distinct to the underlying action brought against them, the operative factual findings on which we relied in part I B of this opinion compel the conclusion that the defendants are unable to demonstrate that the equitable doctrines on which they rely apply in this case. The court did not

find credible the testimony at trial that the decedent had made promises to the effect that the defendants could remain in the subject premises beyond his death and that the defendants had relied on such representations to their detriment. The court characterized the representations allegedly made by the decedent as "convenient memories" that were unequivocally contradicted by the decedent's written estate plans. The court specifically found that the defendants did not believe that they had the right to remain in the subject premises "forever" and found that, even if an implicit promise to that extent had been made, it certainly could not have extended beyond the decedent's life. The defendants have failed to demonstrate that these critical factual determinations were clearly erroneous, and, thus, they have failed to demonstrate that the court erred in rejecting their equitable defenses.

C

Finally, the defendants in AC 46038 claim that the court abused its discretion and prejudiced them by consolidating for trial the action underlying this appeal with four other related summary process actions. We decline to reach the merits of this unpreserved claim of error.

The present claim and the arguments made by the defendants in support thereof, are identical to the claim and arguments that we addressed in part I C of this opinion. It would serve no useful purpose to reiterate our discussion of that claim again here. Relying on our analysis in part I C, we decline to reach the merits of this unpreserved claim.

III

AC 46040

A

First, the defendant in AC 46040 claims that the plaintiff lacked standing to commence the action. We are not persuaded.

In support of this unpreserved claim, the defendant argues that the plaintiff's commencement of the underlying summary process action reflects an abuse of her authority under the will and trust of the decedent and that the plaintiff is acting in her own self-interest rather than acting as a fiduciary on behalf of the estate of the decedent. Having carefully examined the arguments raised by the defendant, we conclude that they are substantially the same as those raised by the defendants in AC 46037, which we rejected in part I A of this opinion. It would serve no useful purpose to reiterate that analysis here. Relying on our analysis in part I A of this opinion, we conclude that the defendant's standing claim is without merit.

B

Next, the defendant in AC 46040 claims that the court improperly failed to conclude that he had a present right to remain in the subject property or that equitable considerations precluded the plaintiff from obtaining judgment in her favor. We are not persuaded.

The defendant argues that by virtue of his beneficiary status under the will and trust of the decedent, he has a "present, vested right in the real estate subject to this summary process action  .  .  .  ." The defendant also argues that the will and trust executed by the decedent "reflect oral promises made to Frank to the effect that he would always be taken care of." The defendant relies on evidence that, in his view, demonstrated that he worked for the family business on terms favorable to the business in reliance on the alleged promises made by his father. He argues that, "[w]hether based on the express promises contained in the will and trust instruments, or the many promises and assurances made by [the decedent] to Frank over the years  .  .  .  the evidence amply establishes that the subject premises must be maintained in constructive trust for Frank and [the

decedent's] other descendants . . . . [The plaintiff's] attempt to dispossess the family from the family business and liquidate the assets contravenes both [the decedent's] express written intent as well as his conduct over the course of decades." Moreover, the defendant argues that, in light of promises made to him by the decedent, and his reliance on those promises to his detriment, the doctrine of estoppel prohibits the plaintiff from obtaining possession of the subject premises.

The arguments raised by the defendant in this appeal are similar to those raised by the defendants in AC 46037 and addressed in part I B of this opinion. It would serve no useful purpose to reiterate the legal principles set forth therein, which likewise govern this claim. Despite the factual differences involving the underlying action, the operative factual findings on which we relied in part I B of this opinion compel the conclusion that the defendant is unable to demonstrate that he had a present right to occupy the property forever by virtue of his beneficiary status under the will or the trust, both of which authorized the plaintiff to dispossess him from the property and dispose of it as she saw fit. Moreover, the defendant is unable to demonstrate that the equitable doctrines on which he relies apply in this case. As we stated previously in this opinion, the court did not find credible the testimony at trial that the decedent made promises to the effect that the defendant could remain in the subject premises beyond his death and that the defendant had relied on such representations to his detriment, characterizing these claimed representations as "convenient memories" that were unequivocally contradicted by the decedent's written estate plans. The court specifically found that the defendant, did not believe that he had the right to remain in the subject premises "forever" and found that, even if an implicit promise to that extent had been made, it certainly could not have extended beyond the life of the decedent.

Moreover, the court reasonably concluded that the defendant's conduct, in signing a lease for the subject premises in 2019, undermined the credibility of his testimony that he believed he had a right to occupy the subject premises pursuant to promises made by the decedent. The court stated that, "if the defendant . . . truly believed he had a right to stay at the property forever without payment, why would he execute the 2019 lease? It was not because of duress, but because he knew he had no continual ongoing right and his arguments that he has a forever right to possession without compensation are just a convenient legal theory now that the plaintiff is seeking possession." The defendant has failed to demonstrate that the court's factual determinations were clearly erroneous and, thus, he has failed to demonstrate that the court erred in rejecting his equitable defenses.

C

Finally, the defendant in AC 46040 argues that the court abused its discretion and prejudiced him by consolidating for trial the action underlying this appeal with four other related summary process actions. For the reasons previously stated in part I C of this opinion, we decline to reach the merits of this unpreserved claim of error.

The present claim and the arguments made by the defendant in support thereof, are identical to the claim and arguments addressed in part I C of this opinion. It would serve no useful purpose to reiterate our discussion of that claim again here.

The judgments are affirmed.

In this opinion the other judges concurred.