******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THERESA K. FRECCIA, EXECUTOR (ESTATE OF
FRANK J. FRECCIA, JR.) *v.* FRANK J.
FRECCIA III ET AL.
(SC 21138)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiff brought a summary process action, seeking to gain possession
of certain property after the defendants continued to occupy the property
beyond the expiration of the lease. The property, which was originally owned
by the plaintiff and the plaintiff's husband, F, as joint tenants, vested in
the plaintiff after F's death. The plaintiff commenced her summary process
action in her capacity as "executor," purportedly of F's estate, and the notice
to quit that was served on the defendants, which was signed by the plaintiff's
attorney, also indicated that it was being issued by the plaintiff in her capac-
ity as executor. Thereafter, the trial court granted the plaintiff's motion
to substitute herself, in her individual capacity, as the plaintiff. The trial
court ultimately rendered judgment of possession for the plaintiff, from
which the defendants appealed to the Appellate Court. Before the Appellate
Court, the plaintiffs claimed for the first time that the notice to quit was
invalid and that the trial court therefore lacked subject matter jurisdiction
over the summary process action insofar as the notice to quit did not comply
with the statute (§ 47a-23 (a)) requiring that such notice be issued by either
the owner of the property or the owner's legal representative, attorney-at-
law or attorney-in-fact. The defendants specifically contended that, when
the notice to quit was served on them, the plaintiff owned the property in
her individual capacity, but the notice was signed by counsel on behalf of
the plaintiff in her capacity as an executor. The Appellate Court affirmed
the trial court's judgment, concluding that the notice to quit had complied
with § 47a-23 (a). On the granting of certification, the defendants appealed
to this court. *Held*:

Although this court disagreed with the Appellate Court that the notice to
quit strictly complied with § 47a-23 (a), any defect in the notice was circum-
stantial and did not deprive the trial court of subject matter jurisdiction by
virtue of the statute (§ 52-123) excusing circumstantial defects in pleadings
and certain judicial proceedings.

When viewed in its entirety, the notice to quit contained a defect insofar
as it conveyed that it was being issued by the plaintiff in her capacity as
executor when it was undisputed that the plaintiff owned the property in
her individual capacity, and neither F's estate nor the executor of that estate
ever owned the property.

Nevertheless, the defect in the notice to quit was circumstantial rather than
substantive, as the notice conveyed the essential statutory information,
including the identity of the property, the reason for the notice to quit, and

the quit date, and the notice also identified the owner of the property, even though it mistakenly appended the term "executor" to the owner's name.

Although the executor designation was inaccurate, there was no indication that the defendants were misled by this inaccuracy, and, therefore, the defendants were not prejudiced.

Moreover, the notice to quit did not identify any specific estate for which the plaintiff purported to act as executor, which reduced any likelihood that the defendants were confused as to the identity of the property owner or the source of the notice, the defendants conceded that all parties understood that the property was not a part of F's estate, and the defendants did not object to the plaintiff's motion to substitute herself as the plaintiff or raise the claimed defect until their appeal before the Appellate Court.

Argued March 9—officially released May 26, 2026

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Stamford-Norwalk, Housing Session, where Theresa K. Freccia, in her individual capacity, was substituted as the plaintiff; thereafter, the case was tried to the court, *Spader, J.*; judgment for the plaintiff, from which the defendants appealed to the Appellate Court, *Cradle, Suarez* and *Seeley, Js.*, which affirmed the trial court's judgment, and the defendants, on the granting of certification, appealed to this court. *Affirmed.*

*John J. Morgan*, for the appellants (defendants).

*Joseph DaSilva, Jr.*, with whom, on the brief, were *Marc J. Grenier* and *Colin Connor*, for the appellee (plaintiff).

*Opinion*

DANNEHY, J. In this summary process action, the defendants, Frank J. Freccia III, Tammie Freccia, Locksley Freccia, and Dartagnan Freccia,[1] appeal from the judgment of the Appellate Court affirming the trial

---

[1] In the interest of simplicity, we refer to each of the defendants individually by first name when appropriate. Further, the defendants note that Dartagnan's name is misspelled in the complaint, reflected with an apostrophe as "D'artagnan." We use the proper spelling in this opinion, as there is no ambiguity regarding the identity of the party being sued.

court's judgment of possession of certain premises in Greenwich in favor of the plaintiff, Theresa K. Freccia.[2] The sole issue presented in this certified appeal is whether the Appellate Court correctly determined that the notice to quit served on the defendants complied with General Statutes § 47a-23 (a)[3] and, thus, that the trial court had subject matter jurisdiction over the action. Although we disagree with the Appellate Court that the notice to quit strictly complied with the statute, we conclude that the defect in the notice was circumstantial and, therefore, did not deprive the trial court of jurisdiction. Accordingly, we affirm the judgment of the Appellate Court.

I

In 2018, Frank J. Freccia, Jr. (decedent), died. He and his wife, the plaintiff, held title to the premises at issue in this appeal known as 40 Locust Street, Building 2 and

---

[2]The plaintiff commenced this summary process action in her capacity as the executor of the estate of her husband, Frank J. Freccia, Jr. Thereafter, the court granted the plaintiff's motion to substitute herself, in her individual capacity, as the plaintiff.

[3]General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor, or the owner's or lessor's legal representative, or the owner's or lessor's attorney-at-law, or in-fact, desires to obtain possession or occupancy of any land or building . . . and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons: (A) By lapse of time . . . (D) nonpayment of rent within the grace period provided for residential property in section 47a-15a or 21-83 . . . or (2) when such premises, or any part thereof, is occupied by one who never had a right or privilege to occupy such premises; or (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner or lessor, or such owner's or lessor's legal representative, or such owner's or lessor's attorney-at-law, or in-fact, shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit, at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

Although § 47a-23 has been amended since the notice to quit was served on the defendants; see, *e.g.*, Public Acts, Spec. Sess., November, 2025, No. 25-1, § 37; those amendments have no bearing on the merits of this appeal. For purposes of clarity and convenience, we refer to the current revision of the statute.

Garage in Greenwich (property), as joint tenants with rights of survivorship. Upon his death, full title vested in the plaintiff by operation of law, rendering her the sole owner of the property. The plaintiff was appointed the executor of the decedent's estate.

On or about June 1, 2019, Frank entered into a written lease with the plaintiff, his mother, for the use and occupancy of the property through May 31, 2020. He and the other defendants[4] continued to occupy the property upon the lease's expiration, and, on August 14, 2021, the plaintiff caused a notice to quit to be served on the defendants, directing them to vacate the premises on or before September 19, 2021. The notice reflects that it was issued by "THERESA K. FRECCIA, EXECUTOR" and was signed by "Mark A. Sank, Her Attorney." Around that same time, the plaintiff, in her capacity as executor of the decedent's estate, with the assistance of Sank, also served notices to quit on other relatives occupying property that was a part of the decedent's estate.

The plaintiff commenced the underlying summary process action by writ, summons, and complaint dated September 20, 2021, which identified the plaintiff in the action as "Theresa K. Freccia, Executor of the Estate of Frank J. Freccia, Jr." A revised complaint filed on December 20, 2021, retained the same designation. On February 10, 2022, the plaintiff moved to substitute herself, in her individual capacity, as the plaintiff in place of herself in her capacity as executor of the decedent's estate. In support of that motion, the plaintiff represented that she held title to the property in her individual capacity as the surviving joint tenant with the decedent and that it was therefore more appropriate for her to proceed in that capacity. The defendants did not oppose the motion, which the trial court granted.

The defendants filed an answer, special defenses, and a counterclaim. By way of special defenses, the defendants first alleged that enforcement of a forfeiture under the

[4]The defendants are immediate family members: Frank and Tammie are married, and Locksley and Dartagnan are their children.

circumstances would be unconscionable and inequitable. Second, they claimed that the plaintiff had failed to perform adequately under an agreement pursuant to which the decedent had granted them a life estate in the property. Third, they asserted that, in light of that life estate, the notice to quit was a nullity. In their counterclaim, the defendants alleged that the decedent and Frank had entered into an agreement under which the defendants were granted a life estate in the property in exchange for Frank's performance of renovations to the premises, continued operation of the family automobile business, Freccia Brothers Auto Sales, payment of certain related expenses, and acceptance of below market compensation for work performed at the business. The defendants further alleged that they relied on this agreement, have resided at the property for decades, and that Frank fully performed his obligations thereunder. They claimed that the plaintiff breached the agreement by commencing this summary process action and that it would be against equity and good conscience to deprive them of the benefit of the agreement and the asserted life estate. The defendants did not amend their answer, special defenses, or counterclaim after the plaintiff's motion to substitute was granted.

A bench trial was held over multiple dates in 2022.[5] On November 17, 2022, the trial court issued a memorandum of decision, finding in favor of the plaintiff and rejecting the defendants' special defenses and counterclaim. It accordingly rendered judgment of possession in favor of the plaintiff but stayed execution until March 31, 2023.

The defendants appealed to the Appellate Court. *Freccia* v. *Freccia*, 232 Conn. App. 353, 354–55, 336 A.3d 490 (2025). They claimed for the first time on appeal that the notice to quit served on them was invalid, and, as a result, the trial court lacked subject matter jurisdiction

---

[5]The case was tried together with four related cases involving properties owned by the decedent's estate. See *Freccia* v. *Freccia*, Superior Court, judicial district of Stamford-Norwalk, Housing Session, Docket Nos. NWH CV-21-6006595-S, NWH-CV-21-6006597-S, NWH-CV-6006600-S, NWH-CV-6006602-S and NWH-CV-6006603-S.

over the summary process action. Id., 379, 381. Specifically, they asserted that the property was owned by the plaintiff, in her individual capacity, but the notice to quit was signed by counsel on behalf of the plaintiff in her capacity as executor of the estate of the decedent. Id., 380. They further asserted that the estate was never an owner of the property or an attorney for the owner of the property and, thus, the notice to quit was defective on its face. Id.

The plaintiff countered that the notice to quit was not defective because, pursuant to § 47a-23 (a), the notice need only have included the name of the owner's legal representative, attorney-at-law, or attorney-in-fact. Id., 381. The plaintiff argued that the law does not require the owner or the lessor of the property to be identified in the notice to quit and that her attorney's signature was all that was needed to comply with the statute. See id. She additionally claimed that, because the defendants did not raise that issue before the trial court, it was impossible to know whether the trial court considered her attorney, who indisputably issued and signed the notice to quit, as the attorney-at-law for her in her individual capacity as owner of the property or as the attorney-at-law for her in her capacity as executor, or both. Id.

The Appellate Court concluded that the notice to quit served on the defendants complied with § 47a-23 (a). Id., 386. The court observed that it was not disputed that Sank represented the plaintiff both in her individual capacity and in her capacity as executor of the decedent's estate. Id. It explained that, although the notice to quit identified the party who brought the notice to quit as "'Theresa K. Freccia, Executor,'" it did not "expressly identify the owner of the subject premises, let alone state that the estate was the owner." Id. The court reasoned that "[t]he fact that the notice stated that it was being brought by the plaintiff as '[e]xecutor' did not detract from the fact that it identified Sank who was the plaintiff's attorney." Id. The court explained that, "[b]ecause it cannot be disputed that the notice to quit

accurately identified the owner's attorney-at-law," it could not conclude that the notice failed to comply with § 47a-23 (a). Id.

We granted the defendants' petition for certification to appeal to determine whether the Appellate Court correctly so concluded. See *Freccia* v. *Freccia*, 352 Conn. 957, 336 A.3d 1250 (2025).[6]

## II

It is well established that, "before a landlord may pursue its statutory remedy of summary process under § 47a-23, the landlord must prove its compliance with all the applicable preconditions set by state and federal law . . . ." *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 143, 520 A.2d 173 (1987). A notice to quit is one such precondition and, if defective, will deprive a court of subject matter jurisdiction, except in narrow circumstances. See, e.*g.*, *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 388, 973 A.2d 1229 (2009); *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007). Our review of whether a notice to quit served by a plaintiff effectively conferred subject matter jurisdiction is plenary. See, e.*g.*, *Bayer* v. *Showmotion, Inc.*, supra, 388.

We have explained that "[s]ummary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms." (Internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, supra, 284 Conn. 5. Because "[s]ummary process statutes secure a prompt hearing and final determination," they

[6]We certified the following question for review: "Did the Appellate Court correctly determine that the notice to quit that had been served on the defendants complied with . . . § 47a-23 because it identified either the owner of the property or the owner's attorney, and that the trial court, therefore, had subject matter jurisdiction over the underlying summary process action?" *Freccia* v. *Freccia*, supra, 352 Conn. 957.

are "narrowly construed and strictly followed." (Internal quotation marks omitted.) *Young* v. *Young*, 249 Conn. 482, 488, 733 A.2d 835 (1999).

Although summary process statutes are narrowly construed and require strict adherence; *Bayer* v. *Show-motion, Inc.*, supra, 292 Conn. 388; the remedial provisions of General Statutes § 52-123[7] nonetheless apply to notices to quit issued pursuant to § 47a-23 and excuse circumstantial defects contained therein. Id., 389–90. These principles work in tandem. Narrow construction and strict compliance ensure that landlords adhere to the essential statutory prerequisites governing notices to quit under § 47a-23, whereas § 52-123 preserves otherwise valid summary process proceedings from being defeated by purely circumstantial defects. In determining whether a defect in a notice to quit is circumstantial rather than substantive, we consider whether the defendant had actual notice of the essential statutory information required of such notice and whether the defendant was in any way misled to his or her prejudice. Id., 391. We also look to see whether the notice apprised the tenant of the information needed to protect himself or herself against "premature, discriminatory or arbitrary eviction." (Internal quotation marks omitted.) *Getty Properties Corp.* v. *ATKR, LLC*, 315 Conn. 387, 400, 107 A.3d 931 (2015).

Section 47a-23 (a), which sets forth the requirements for a notice to quit, provides in relevant part that the notice must be given by an "owner or lessor, or the owner's or lessor's legal representative, or the owner's or lessor's attorney-at-law, or in-fact . . . ." The defendants argue that the notice to quit was issued by "Theresa K. Freccia, Executor" and signed by Sank, in his capacity as a representative for the estate/executor. The defendants contend that, because neither the estate nor its executor

[7] General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

was ever the owner or lessor of the property, the notice to quit is fatally defective. According to the defendants, "everyone understood the property was never a part of [the decedent's] estate."

The plaintiff contends that the notice is not defective because it was signed by Sank, who at the time represented the plaintiff in both her individual capacity and her capacity as executor of the decedent's estate. She asserts that the inclusion of the word "executor" after her name above the signature line is immaterial; what matters is that the signatory—here, her attorney, Sank—is among the persons designated in § 47a-23 (a) as authorized to sign a notice to quit, i.e., the owner's legal representative or the owner's attorney-at-law or in-fact. She contends that § 47a-23 does not require a property owner to personally sign the notice to quit or to be expressly named therein, and, therefore, Sank's signature was all that was needed to satisfy the statute because he was the true owner's attorney-at-law. In support of her position, she relies on the Appellate Court's decision in *U.S. Bank National Assn.* v. *Karl*, 128 Conn. App. 805, 809–10, 18 A.3d 685, cert. denied, 302 Conn. 909, 23 A.3d 1249 (2011). In that case, the notice to quit was signed by "'Renee E. Bishop, Attorney for Owner,'" but it did not identify the owner of the property. Id., 807 n.1. The Appellate Court concluded that the notice satisfied § 47a-23 (a), reasoning that the statute expressly authorizes a property owner's attorney-at-law to issue a notice to quit on the owner's behalf and that the statutory form set forth in § 47a-23 (b) contains no indication that the legislature considered the identity of the owner to be necessary. Id., 810.

We are not persuaded by the plaintiff's arguments. Her position that Sank's signature is dispositive would, in effect, require us to disregard the designation of the owner's identity, including the word "executor," which was included in the notice to quit. Nothing in *U.S. Bank National Assn.* or our case law, however, suggests that courts should focus exclusively on the identity of the

signatory while disregarding other language in the notice. Section 47a-23 does not require that the notice to quit include the owner's name, but, if the plaintiff chooses to include her name, a court may not ignore that designation. Indeed, legal notices must be read as a whole to determine what they reasonably convey. See, e.g., *Anatra* v. *Zoning Board of Appeals*, 307 Conn. 728, 745, 59 A.3d 772 (2013); *Bayer* v. *Showmotion, Inc.*, supra, 292 Conn. 392; *Flynn* v. *First National Bank & Trust Co. of New Haven*, 131 Conn. 430, 433–34, 40 A.2d 770 (1944). Viewed in its entirety, the notice to quit plainly conveys that the plaintiff, as "executor," issued the notice and that it was signed by her attorney, Sank. The "executor" designation is an affirmative representation of the capacity in which the plaintiff purported to proceed and in which Sank purported to represent her. Accordingly, we agree with the defendants that the notice to quit contains a defect, as it is undisputed that the property was owned by the plaintiff in her individual capacity, not by the estate.

Our determination that the notice to quit contains a defect does not end the inquiry, however, because, as we explained, not every defect in a notice to quit deprives the trial court of subject matter jurisdiction. In *Bayer* v. *Showmotion, Inc.*, supra, 292 Conn. 381, we explained that, although a proper notice to quit is a condition precedent to a summary process action; id., 388; § 52-123 applies to such notices and excuses circumstantial defects contained therein. Id., 390. We concluded that the notice to quit containing an erroneous quit date—one that had already passed—presented only a circumstantial defect and that the trial court, therefore, properly exercised jurisdiction over the action. Id., 392. We noted that the trial court had found "that other dates in the notice to quit and in the plaintiff's complaint provided actual notice of the date on which the defendant was requested to vacate the premises" and "that there was no confusion surrounding that date." Id. Further, we noted that "the defendant's failure to raise the defect in the notice to quit for more than one year while it raised other defenses to

the complaint demonstrates that it was not prejudiced by the defect . . . ." Id.

Similarly, in *Getty Properties Corp.* v. *ATKR, LLC*, supra, 315 Conn. 387, this court again considered a challenge to the validity of various notices to quit, this time based on the manner in which they were signed. Id., 399–400. Specifically, the notices were signed not by the plaintiffs' attorney personally, but by an associate in the attorney's office, who signed the attorney's name followed by the associate's own initials. Id. The defendants argued that the notice failed to comply with § 47a-23 (a) because the statute authorizes issuance of a notice by, among other individuals, the owner's attorney-at-law, and, in their view, that authorization did not extend to an associate signing on the attorney's behalf. Id. We rejected the defendants' claim, explaining that it was undisputed that the associate had authority to act on behalf of the attorney and that the notices were, in substance, issued under the attorney's direction. Id., 400–401. We further explained that there was no prejudice to the defendants. Id., 401. Relying on *Bayer*, we concluded that "the trial court was not deprived of subject matter jurisdiction over the plaintiffs' summary process actions." Id.

Applying those principles to the present case, we conclude that the defect in the notice was circumstantial rather than substantive. The notice conveyed the essential statutory information, including the identity of the property, the reason for the notice to quit, and the quit date. The notice also identified the property's actual owner, "Theresa K. Freccia," but mistakenly appended the term "executor" to her name, and it was signed by her attorney. Although the executor designation was inaccurate, there is no indication that the defendants were misled to their prejudice by this misnomer. See *Western Boot & Clothing Co.* v. *L'Enfance Magique, Inc.*, 81 Conn. App. 486, 491–92, 840 A.2d 574 (concluding that misnaming of plaintiff in notice to quit did not deprive trial court of subject matter jurisdiction), cert. denied, 269 Conn. 903, 852 A.2d 737 (2004). Notably,

the notice did not identify any specific estate for which the plaintiff purported to act as executor, which reduces any likelihood that the defendants were confused or misled as to the identity of the property owner or the source of the notice. The defendants also concede that all parties understood that the property was not a part of the decedent's estate. At oral argument, counsel for the defendants likewise was unable to articulate any particular way in which the defendants were prejudiced by the errant designation. Finally, the defendants did not object to the plaintiff's motion to substitute or assert any new defenses or counterclaims after she was substituted as the plaintiff in her individual capacity. In fact, the defendants did not raise this defect until their appeal to the Appellate Court, which further underscores that they were not misled to their prejudice. See *Bayer* v. *Showmotion, Inc.*, supra, 292 Conn. 392.

In sum, we conclude that the defect in the notice to quit did not deprive the trial court of subject matter jurisdiction. The notice to quit conveyed the essential statutory information, and there is no indication that the defendants were misled to their prejudice.[8]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[8] The defendants argue that the Appellate Court erred in concluding that the defect in the notice to quit was cured by Sank's dual representation of the executor/estate and the plaintiff in her personal capacity, on the ground that no evidence in the record established such dual representation at the time the notice was served. Because our conclusion does not rest on the Appellate Court's reasoning, we need not address this argument.